## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JAHAIRA BRATTON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 13-2063 (RC) |
| | : | | |
| v. | : | Re Document No.: | 10 |
| | : | | |
| STARWOOD HOTELS AND RESORTS | : | | |
| WORLDWIDE, INC. | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

Jahaira Bratton brings this employment discrimination action against Starwood Hotels and Resorts Worldwide, Inc. ("Starwood"). Specifically, Ms. Bratton alleges that her former employer, the W Hotel in Washington D.C. ("Hotel"), discriminated against her on the basis of race in violation of the District of Columbia Human Rights Act of 1977 ("DCHRA"), D.C. Code §§ 2-1401.01-2.1411.06. Ms. Bratton also alleges that her employer retaliated against her in violation of the DCHRA following a series of complaints, including a formal complaint to the W Hotel Ethics Hotline. She alleges both of these prohibited actions formed the basis for her unlawful termination. The Defendant moved to dismiss the claims on the grounds that both were preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. For the reasons stated herein, the Court will deny the Defendant's motion.

## II. FACTUAL BACKGROUND

Plaintiff, an African-American female, began her employment with the Defendant in April 2010 as a server in the POV Lounge of the W Hotel. Pl.'s Am. Compl. ¶ 3, Jan. 20, 2014, ECF No. 8 ("Am. Compl."). Plaintiff alleges that in 2010, the Hotel began requiring the female servers to don new uniforms which "left almost nothing to the imagination," "objectified her sexually," and "created serious back and neck issues." *Id.* at ¶ 4. Ms. Bratton complained on numerous occasions to management and human resources, protesting that the uniforms were "sexually discriminatory toward women," and created a hostile work environment which included her being "groped by guests regularly." *Id.* at ¶ 5. After a promise regarding new uniforms did not come to fruition, Plaintiff submitted a formal complaint to the W Hotel Ethics Hotline about the "sexually degrading uniforms." *Id.* at ¶ 5-6.

Plaintiff alleges that Hotel management began to treat her differently following her complaints. *Id.* at ¶ 7. Another employee notified Plaintiff that her manager had reviewed security footage of her movements in and out of the building. *Id.* at ¶ 8. Plaintiff claims it was common practice for the manager to pull footage only of African-American employees' comings and goings from the building. *Id.* Plaintiff asserts that bringing these inappropriate practices to her manager's attention further upset him. *Id.* at ¶ 9.

In early April 2013, Plaintiff was told that she was being suspended pending an investigation for undisclosed reasons, and was ordered to go home. *Id.* at ¶ 10. Shortly thereafter, Plaintiff was officially terminated from her position as a result of being "late five times over the last 30 days." *Id.* at ¶ 11. Plaintiff claims that a majority of these late arrivals were within a "seven minute grace period" that employees are given to "clock in without

repercussions." *Id.* No other employees were allegedly punished or terminated for being late. *Id.*

Plaintiff was a member of a bargaining unit whose terms and conditions of employment were governed by a Collective Bargaining Agreement ("CBA"). *See* Def.'s Mot. Dismiss Pl.'s Am. Compl., 2, Feb. 6, 2014, ECF No. 10 ("Def.'s Mot."). If a complaint arises out of the terms of the CBA, the parties are required to utilize a specific grievance and arbitration procedure. *See id.*

Ms. Bratton filed the instant action in the Superior Court of the District of Columbia. Pl.'s Compl. 1, ECF No.1-1. Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1332, and 1441. Notice of Removal 1, Dec. 30, 2013, ECF No. 1. Plaintiff now alleges the Defendant retaliated against her in violation of the DCHRA by terminating her for "regularly complaining and then filing a formal complaint." *See* Am. Compl. Count I. She also alleges the Defendant discriminated against her in violation of the DCHRA when it terminated her after only "review[ing] security footage of African-American employees." *See* Am. Compl. Count II. Defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's claims were preempted by Section 301 of the LMRA. *See* Def.'s Mot. 1. The Court now turns to the relevant legal standards.

### III. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require a complaint to contain a "short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits. Rather, it tests whether a plaintiff has properly stated a

claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A court considering a Rule 12(b)(6)

motion presumes that the complaint's factual allegations are true and construes them liberally in

the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135

(D.D.C. 2000).  A plaintiff need not plead all elements of her prima facie case in the complaint to

survive a 12(b)(6) motion to dismiss.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14

(2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28-29 (D.D.C. 2010).

Nevertheless, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim has

facial plausibility when the pleaded factual content "allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id*.  "The plausibility standard

is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully."  *Id*.  In addition, a court "need not accept a plaintiff's legal

conclusions as true, nor must the court presume the veracity of legal conclusions that are

couched as factual allegations."  *Craig v. District of Columbia*, 881 F. Supp. 2d 26, 31 (D.D.C.

2012) (citations omitted).

## IV.  ANALYSIS

The Defendant argues that the Plaintiff's DCHRA retaliation and discrimination claims

are "inextricably intertwined" with the CBA's provisions, and are thus preempted under LMRA

Section 301.  *See* Def.'s Mot., 6.  Consequently, because Plaintiff has failed to exhaust the

CBA's mandatory grievance and arbitration procedures, Defendant contends that the claims must

be dismissed with prejudice.  *Id*. at 1-2.  The Court is not persuaded by Defendant's argument.

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  The Supreme Court has held that Section 301 "provides federal-court jurisdiction over controversies involving collective-bargaining agreements, [and]…also 'authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements.'"  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957)).  In enacting Section 301, "Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules."  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209-10 (1985) (citations omitted).  Accordingly, Section 301 preempts any claims that are either: (1) founded directly upon rights created by a collective bargaining agreement, or (2) substantially dependent on an analysis or interpretation of the terms of that agreement.  *Lingle*, 486 U.S. at 405, 410 n.10; *Allis-Chalmers*, 471 U.S. at 220, *Berry v. Coastal Intern. Sec., Inc.*, 968 F. Supp. 2d 104, 110 (D.D.C. 2013).

When a plaintiff does not clearly assert a violation of the terms of a CBA in the complaint, courts must determine whether the claims trigger an analysis or interpretation of the CBA, and thus preemption.  In *Lingle*, the Supreme Court explained that a state-law remedy is independent of the collective bargaining agreement, and is thus not preempted by §301 of LMRA, where "resolution of the state-law claim does not require construing the collective-bargaining agreement." *Lingle*, 486 U.S. at 407. Thus, even if the "collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for §301 pre-emption purposes." *Id.*

at 410. For example, a court's analysis of a retaliatory discharge claim may involve "the same factual considerations as the contractual determination of whether *Lingle* was fired for just cause." *Id.* at 408. Nevertheless, such parallelism does not "render[ ] the state-law analysis dependent upon the contractual analysis." *Id.* After all, "[Section] 301 preemption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the *substantive rights* a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Id.* at 409 (emphasis added).

Indeed, "the Supreme Court has repeatedly admonished that §301 preemption is not designed to trump *substantive and mandatory* state law regulation of the employee-employer relationship." *Humble v. Boeing Co.*, 305 F. 3d 1004, 1007 (9th Cir. 2002) (emphasis added). Thus, the crucial question a court must ask is: "what is the source of the right that the plaintiff is trying to vindicate?" *Berry*, 968 F. Supp. 2d at 110 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 396 (1987)). As the Supreme Court has explained, where an employee's claim is "based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers," the policy considerations underlying the LMRA simply do not apply. *Lingle*, 486 U.S. at 411–412. As a result, Section 301 does not preempt a claim where the employee is vindicating a non-negotiable and mandatory right originating outside of the CBA. *see e.g., Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 873 (7th Cir. 2011) ("A state law claim is preempted only when it asserts rights or obligations arising under a collective bargaining agreement or when its resolution is substantially dependent on the terms of the collective bargaining agreement."); *Detabali v. St. Luke's Hospital*, 482 F. 3d 1199, 1203 (9th Cir. 2007) ("[T]he need to interpret the [collective bargaining agreement] must inhere in the nature of the plaintiff's claim. If the

claim is plainly based on state law, §301 preemption is not mandated simply because the defendant refers to the [collective bargaining agreement] in mounting a defense."); *Harper v. Autoalliance Int'l, Inc.*, 392 F. 3d 195, 209 (6th Cir. 2004) (holding that an employee's retaliation claim was not preempted by Section 301 because he was exercising his rights under the state's anti-discrimination laws, and the terms of the CBA were, at most, "relevant background for [the employee's] termination"); *Trevino v. Ramos, et al.*, 197 F. 3d 777, 781 (5th Cir. 1999) ("The right to be free from retaliatory discharge…exists…independently of the CBA. *The right originates in the statute which Texas has enacted to protect employees seeking compensation for work-related injuries. It does not depend on any right or duty originating in the CBA*.") (emphasis in original); *Martin Marietta Corp. v. Maryland Com'n on Human Relations*, 38 F.3d 1392, 1400-02 (4th Cir. 1994) (holding that both plaintiff's discrimination and retaliation claims were beyond the preemptive scope of Section 301 because they involved "purely factual questions" and asserted rights independent of the CBA); *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748 (9th Cir. 1993) (explaining that Section 301 preemption of plaintiff's discrimination claim was inappropriate given that the CBA "neither created the right [plaintiff] asserts nor can it remove or alter that right"); *Daniels v. Potomac Elec. Power Co.*, 789 F. Supp. 2d 161, 164-165 (D.D.C. 2011) (concluding that plaintiff's DCHRA discrimination and retaliation claims were not preempted because plaintiff's claims did not require interpretation of the CBA, and were "based on rights created by DCHRA and not rights created by the CBA").

However, where the rights are created by the CBA, or involve negotiable state duties "around which parties may contract," Section 301 will preempt the claim. *Humble*, 305 F.3d at 1007 n.3; *see also*, *Int'l Broth. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 861-62

(1987) (holding that plaintiff's negligence claim was preempted by Section 301 because

employer's duty to provide a safe workplace was expressly created by the CBA); *Allis-Chalmers*,

471 U.S. at 217-18 (finding breach of duty of good faith claim preempted under Section 301

because the CBA created the duty upon which the claim was founded); *Cephas v. MVM, Inc.*,

520 F.3d 480, 484 (D.C. Cir. 2008) (finding preemption under Section 301 when the plaintiff

alleged that the defendant had transferred him in violation of the company's collective

bargaining agreement); *General Productions, LLC v. I.A.T.S.E. Local 479*, 981 F. Supp. 2d 1357,

1361 (N.D. Ga. 2013) (plaintiff's trespass claim against union representative was preempted

because a CBA provision provided that plaintiff "[shall] permit an authorized representative of

the Union access to all production sites"); *Bush v. Clark Const. & Concrete Corp.*, 267 F. Supp.

2d 43, 46 (D.D.C. 2003) (holding that the plaintiff's claim that he was owed wages following his

discharge was preempted because this right was created by a CBA provision stating that an

employee who is discharged "shall be paid immediately").[1] With this framework as a guide, the

Court now turns to the claims at issue.

## A. Plaintiff's Unlawful Retaliation Claim

In Count I, Plaintiff alleges that her employer unlawfully retaliated against her in

violation of the District of Columbia Human Rights Act ("DCHRA"). *See* Am. Compl. Count I.

The Defendant argues that this claim is preempted under Section 301 of the LMRA because it is

---

[1] This conclusion is also consistent with the policy reasoning in *Lingle*: "[Section] 301 preemption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409 (1988). Further, "nothing in § 301 demonstrates Congressional intent to displace completely state labor law regulation, as such a rule would permit unions and employers to exempt themselves from state labor standards that they disfavored." *Martin Marietta Corp. v. Maryland Com'n on Human Relations*, 38 F.3d 1392, 1397 (4th Cir. 1994) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211-12 (1985)).

substantially dependent upon an analysis of the CBA. *See* Def.'s Mot. at 6. To establish a *prima facie* case of retaliation under the DCHRA, a plaintiff must show that "(1)[she] was engaged in a protected activity or that [she] opposed practices made unlawful by the DCHRA, (2) that the employer took an adverse action against [her], and (3) a causal connection existed between [her] opposition or protected activity and the adverse action taken against [her]." *Berry*, 968 F. Supp. 2d at 114 (quotations and citations omitted).

The Defendant urges this Court to find Plaintiff's retaliation claim preempted because resolving her claim would require the Court to interpret several CBA provisions. *See* Def.'s Mot.at 8. Specifically, Defendant argues that the Court must address CBA Art. 8.1, which requires the Hotel to provide employee uniforms that are "safe, of good quality, and consistent with generally accepted hotel industry standards." *Id.* At the outset, the Court notes that the appropriateness of the uniforms is irrelevant to Plaintiff's retaliation claim. In order to state a claim for retaliation, the Plaintiff need not allege that the uniforms were in fact sexually degrading and in violation of the DCHRA. *Carter-Obayuwana v. Howard Univ.*, 764 A.2d 779, 790 (D.C. 2001) (explaining that for a retaliation claim "[t]he plaintiff does not have to prove that the conduct opposed was in fact a violation of [the DCHRA]"). Rather, Plaintiff must merely allege, as she does here, that she complained about the sexually degrading nature of the uniforms, i.e. a protected activity, and was terminated in retaliation. *See* Am. Compl. ¶¶ 15-16. And, in order to complain that the uniforms were sexually degrading, she need not demonstrate that they were unsafe, of poor quality, and inconsistent with generally accepted hotel industry

standards. As a result, CBA Article 8.1 would have no impact on Plaintiff's retaliation claim, and

is thus irrelevant to the Court's preemption analysis.[2]

Moreover, it is clear that Plaintiff's right against retaliation is not created by the CBA,

but is a state-created right under the DCHRA. *See e.g.*, *Lingle* 486 U.S. at 412 (holding that the

state-law protecting employees from retaliatory discharge was independent from the CBA

because the state-law claim could be resolved without interpreting the agreement itself). Plaintiff

alleges that she engaged in a protected activity under the DCHRA when she complained about

the sexually discriminatory uniforms, and that she was fired in retaliation. *See* Am. Compl.

Count I. The Plaintiff is attempting to enforce a right granted to her by the State, not the CBA:

the right to make complaints about sexual harassment without being fired. This right is afforded

to all employees, regardless of whether their employment is governed by a CBA, and cannot be

contracted away. Therefore, given that Plaintiff's retaliation claim rests on a non-negotiable

state-created right, independent of the CBA, it is not preempted by Section 301 of the LMRA.

*See Allis-Chalmers*, 471 U.S. at 213 (stating that the focus in a Section 301 preemption analysis

is whether the claim "confers nonnegotiable state-law rights on . . . employees independent of

any right established by contract").

---

[2] With respect to Defendant's argument that determining whether Plaintiff held a "good faith, reasonable belief" that the uniform violated the DCHRA when she made her complaint would require interpretation of the CBA, *see* Def.'s Mot. at 8, the Court is not persuaded. To satisfy the first prong of a retaliation claim, the plaintiff must "demonstrate a good faith, reasonable belief" that the challenged action is unlawful under Title VII, and thus the DCHRA. *See Welzel v. Bernstein*, 436 F. Supp. 2d 110, 118 (D.D.C. 2006), *accord Sullivan v. Catholic Univ. of Amer.*, 387 F. Supp. 2d 11, 13 (D.D.C. 2005) (holding that in addressing employment claims under the DCHRA, courts look to Title VII jurisprudence). However, this determination would not involve an analysis of the CBA, but would only require the Court to perform a purely factual inquiry into the circumstances surrounding Plaintiff's complaint.

**B. Plaintiff's Discriminatory Discharge Claim**

Plaintiff next alleges that the Defendant unlawfully discriminated against her in violation of the DCHRA because it terminated her for being late after "only watch[ing] and review[ing] security footage of African-American employees." *See* Am. Compl. Count II. Once again, the Defendant argues that Plaintiff's claim is preempted under Section 301 because it is "inextricably intertwined" with, and would require the Court to interpret, "a number of CBA provisions." Def.'s Mot. at 9. To establish a prima facie case of discrimination under the DCHRA, a plaintiff must show: (1) that she belongs to a protected class; (2) that she suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination. *See Williams v. Washington Convention Center Authority*, 407 F. Supp. 2d 4, 6 (D.D.C. 2005).

In support of her claim of discrimination, Plaintiff asserts that her manager "only watched and reviewed security footage of African-American employees." *Id*. at ¶ 22. The Complaint asserts that the Defendant's proffered justification for Plaintiff's termination was that she was "late five times over the last 30 days." *Id*. at ¶ 11. However, Plaintiff alleges that she was treated disparately because a "majority of these late arrivals were only a few minutes late, within the seven minute grace period that employees are given . . . to clock in without repercussions." *Id*.

Defendant argues that resolution of these claims would require interpretation of several CBA provisions.[3] Specifically, Defendant contends that Plaintiff's claim would require

---

[3] In addition to arguing that Plaintiff's claims depend on interpretation of the CBA, the Defendant also argues that its defense, i.e. the non-discriminatory reasons for its treatment of Plaintiff, will turn on various CBA provisions, and that Plaintiff's claims should thus be preempted. *See* Def.'s Mot. at 9. Many courts have rejected this defense preemption theory. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 398 (1987) ("[T]he presence of a federal

interpretation of CBA Side Letter No. 21, which prohibits the Hotel from requiring employees to "punch in prior to their schedule[ed] starting times," and requires time clocks to "be maintained in locations convenient for employees to punch in and out." Def.'s Mot. at 10.

To support its argument, Defendant cites three cases: *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485 (5th Cir. 1996); *Berry*, 968 F. Supp. 2d 104, and *Fouche v. Missouri American Water Co.*, Civ. No. 11-cv-1622, 2012 WL 2718925 (E.D. Mo. July 9, 2012). *See* Def.'s Mot. 10. However, Defendant's reliance on these cases is misguided. First, the *Reece* court relied on an employer defense to trigger Section 301 preemption, which this Court has already rejected. *see supra* n.3. Second, in *Reece,* the plaintiff's discrimination claims turned on questions of "promotion, seniority, and assignment to training programs, all of which [were] provided for in the CBA." *Reece*, 79 F.3d at 487. Likewise, in *Berry*, the plaintiff's discrimination claim turned on his rights to "seniority, a 90-day probationary period after a promotion, and an investigation into the events giving rise to a disciplinary sanction," all of which were rights explicitly granted to the plaintiff by the CBA. *See Berry*, 968 F. Supp. 2d at 111-113. Finally, in *Fouche*, the plaintiff brought a disability discrimination claim because he alleged his employer "terminated his employment after not allowing him to return to work following sick leave." *Fouche*, 2012 WL 2718925, at *6. The *Fouche* court found Section 301 preemption because a CBA provision specifically required that "an employee on sick leave . . . be re-employed upon 'complete recovery'," and therefore, the plaintiff was clearly asserting a CBA-created right. *Id*. In all of

---

question, even a §301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule."); *Price v. Goals Coal Co.*, 161 F.3d 3, 8 (4th Cir. 1998) ("The 'complete preemption exception' to the 'well-pleaded complaint' rule does not apply when the employer merely raises the collective bargaining agreement as a defense to a state law claim."); *Berry v. Coastal Intern. Sec., Inc.*, 968 F. Supp. 2d 104, 114 n.6 (D.D.C. 2013) (noting that "several other circuits have rejected this 'defense preemption' theory"). Thus, the Court finds this argument unpersuasive.

these circumstances, Section 301 preemption was appropriate, given that the plaintiffs in each case were alleging claims founded upon rights conferred to them by the governing CBA.

However, the same is not true in the present case. In reaching its determination here, the Court finds instructive the analysis employed by the Ninth Circuit. In *Ramirez v. Fox Television Station, Inc.*, the plaintiff, whose employment was governed by a CBA, brought a claim against her employer alleging discrimination in the terms and conditions of her employment because of her national origin. *See Ramirez*, 998 F.2d at 745. She alleged, among other things, that she was "bypassed as the audio engineer for Dodgers baseball games despite her requests for those assignments," and that her employer "failed to post job openings or to promote minority employees." *Id*. The defendant-employer argued that her claims were preempted under Section 301 of the LMRA because the rights the plaintiff asserted arose solely under the CBA. *See id*. at 748.

The court in *Ramirez* rejected the defendant's argument for several reasons. First, the court noted that the plaintiff was not asserting the "'right' to work Dodgers games or the 'right' to be promoted"—as the defendant suggested—rather, the plaintiff was asserting the right, afforded to her by state law, "to be free from employment discrimination based on her national origin." *Id*. Second, the court found that the rights conferred to the plaintiff by state law were "nonnegotiable" and could not "be removed by private contract," and thus, the CBA "neither created the right [the plaintiff] assert[ed] nor c[ould] it remove or alter that right." *Id*. (internal quotations and citations omitted). Third, the court found that although the plaintiff's claims may require the court to reference the CBA, they would not involve interpreting the CBA, and thus would not trigger preemption. *Id*. The court further justified this conclusion by explaining that

"merely referring to an agreement does not threaten the goal that prompted preemption—the desire for uniform interpretation of labor contracts." *Id*. at 749.

As in *Ramirez*, the Plaintiff here is not asserting a right to be free from termination for being late. Rather, she is complaining about being targeted and treated disparately because she is African-American, and is asserting her right to be free from employment discrimination based on her race. *See* Am. Compl. Count II. The Defendant argues that its non-discriminatory justification for Plaintiff's termination will require analysis of the CBA's attendance and timeliness provisions. Def.'s Mot. 9-10. However, the Defendant never describes the precise import of these provisions, or explains how or why the Court will need to interpret these provisions to determine whether or not Plaintiff's termination was discriminatory. Indeed, the Defendant does not even claim that there is a dispute about the meaning of the provisions which would require the Court to interpret these provisions. Moreover, the fact that the CBA prohibits the Hotel from requiring employees to "punch in prior to their schedul[ed] starting times," and the Hotel's history in applying this provision, is immaterial to Plaintiff's discrimination claim. *See* Def.'s Mot. 10. As in *Ramirez*, the question is not whether Plaintiff was denied a CBA-derived right to be late, but rather whether Plaintiff was denied the DCHRA-given right to be free from employment discrimination. This right to be free from discrimination cannot be modified by contract to be permissible under certain conditions — it is inherent and immutable under state law. Thus, because the right upon which Plaintiff's claim rests is a "nonnegotiable" state law right, which cannot be removed or altered by the CBA, *see Ramirez*, 998 F.2d at 784, it does not trigger Section 301 preemption.

Further, the mere fact that one of Plaintiff's claims is tangentially related to a CBA provision, in this case CBA Side Letter No. 21, and might require slight reference to the CBA,

does not mean the Court will be required to perform a preemption-inducing interpretation of that provision to resolve the claim.  As noted in *Ramirez,* "reference to or consideration of the terms of a collective-bargaining agreement is not the equivalent of interpreting the meaning of the terms."  *Ramirez*, 998 F.2d at 749; *see also Lingle*, 486 U.S. at 410 ("[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for §301 pre-emption purposes."); *Allis-Chalmers*, 471 U.S. at 211 ("[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301."); *Daniels*, 789 F. Supp. 2d at 165 (noting the existence of an "outer bound" to Section 301 preemption).  Indeed, "when a claim does not arise under a collective bargaining agreement, the claim is preempted only when its resolution depends on the disputed meaning of or requires an interpretation of contract terms." *Rabe*, 636 F. 3d at 873. But where "there is no dispute over the meaning of any terms within the agreement, resolution of the central issue…does not depend on interpretation of the collective bargaining agreement." *Detabali*, 482 F. 3d at 1203.

As already noted above, the Defendant does not identify even a single disputed CBA provision, much less argue that its defense depends on the interpretation of that disputed provision. Moreover, based on the current record, it does not appear that the Court will need to interpret any CBA provisions in order to determine whether the Plaintiff's manager "only watched and reviewed security footage of African-Americans," and what actually motivated Plaintiff's termination. Instead, it appears that this inquiry will consist only of "purely factual inquir[es]" that do not "turn on the meaning of any provision of a collective-bargaining

agreement." *Lingle*, 486 U.S. at 407.  Thus, Plaintiff's discrimination claim[4] is not preempted by

Section 301 of the LMRA.[5]

## V.  CONCLUSION

For the foregoing reasons, the Defendant's motion is DENIED.  An order consistent with

this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 21, 2014                                      RUDOLPH CONTRERAS
                                                             United States District Judge

---

[4] Defendant also argues that Plaintiff has attempted to avoid the preemptive effect of Section 301 by removing certain factual allegations from the amended complaint which may be more likely to "trigger" preemption. Def.'s Reply in support of Mot. Summ. J., 5. Defendant suggests that Plaintiff should be precluded from relying on these dropped allegations if her case is allowed to proceed. The Court does not rule on this issue at this time however, because it is inappropriate to address such evidentiary issues in the context of a motion to dismiss.

[5] Given the Court's findings, Defendant's claim regarding the Plaintiff's failure to exhaust the grievance and arbitration process of the CBA is immaterial.  Additionally, because Plaintiff's claims do not come within the scope of Section 301, the court will not address Defendant's statute of limitations argument.